UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

TODD A. CATELOTTI, )
    Plaintiff )
)
v. )   04-30168-KPN
)
THE UNITED STATES OF AMERICA and ) Docket No.
LES BROWNLEE, AS THE SECRETARY )
OF THE ARMY OF THE UNITED STATES )
OF AMERICA, )
    Defendants )

FILING FEE PAID:
RECEIPT # 305713
AMOUNT $ 150.00
BY DPTY CLK
DATE 8/31/04

COMPLAINT FOR DECLARATORY RELIEF
AND DEMAND FOR JURY TRIAL

1. The plaintiff, Todd A. Catelotti ("Mr. Catelotti"), is an individual who at all relevant times has resided in North Adams, Berkshire County, Massachusetts.

2. The defendant, Les Brownlee, as acting Secretary of the Army, is an officer of the United States of America and head of the Department of the Army pursuant to 10 U.S.C. § 3013, with offices located at 101 Army Pentagon, Washington, District of Columbia.

3. Jurisdiction of this action is predicated upon 28 U.S.C. §§ 1331 and 1346.

4. Venue for this action is predicated upon 28 U.S.C. §§ 1391(e) and 1402(a).

5. This action concerns the validity of a claim which defendant United States has asserted against Mr. Catelotti pursuant to 10 U.S.C. § 2005 for the reimbursement of the costs of his education at the United States Military Academy ("USMA").

6. In pertinent part, 10 U.S.C. § 2005 provides:

> (a) The Secretary [of the Army] may require, as a condition to . . . providing advanced education assistance to any person, that such person enter into a written agreement . . . under the terms of which such person shall agree . . .:
>
> > (3) that if such person, voluntarily or because of misconduct, fails to complete the period of active

> duty specified in the agreement, . . . such person
> will reimburse the United States in an amount that
> bears the same ratio to the total cost of advanced
> education provided such person as the unserved
> portion of active duty bears to the total period of
> active duty such person agreed to serve. . . .

7. In pertinent part, the legislative history for 10 U.S.C. § 2005, which is set forth at 1980 U.S.C.C.A.N., pp. 2833, 2840, states, "It is . . . not the intent of this proposal [authorizing the United States to pursue reimbursement of the cost of advanced education provided to military personnel who fail to complete their active duty] to include situations where an individual is discharged or his education is terminated because of academic failure not deemed willful on the part of the individual, failure to meet physical standards or hardship."

8. Mr. Catelotti was a cadet at the USMA at West Point in the State of New York from 1993 until 1997 and was originally scheduled to graduate from there in June of 1997.

9. On June 28, 1993, which was his first day of Cadet Basic Training at the USMA, Mr. Catelotti signed an Agreement to Serve, a true copy of which is attached hereto as Exhibit A.

10. The Agreement to Serve refers to a Statement of Policies, a true copy of which is attached hereto as Exhibit B.

11. The Statement of Policies refers to Table 1, Regulations for the United States Military Academy. A true copy of that table as of June 28, 1993 is attached hereto as Exhibit C.

12. In pertinent part, the Agreement to Serve provides:

> **II.f.** That if I voluntarily fail, or because of misconduct fail, to complete the period of active duty specified . . . above, I will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided to me as the unserved portion of active duty bears to the total period of active duty I have agreed to serve.
>
> **II.g.** Further, that if I am separated from the United States Military Academy for breach of contract, as defined in . . .

2

> [the] Statement of Policies on the next page, and the Army decides that I should not be ordered to active duty at all because such service would not be in the best interests of the Army, I shall be considered to have either voluntarily or because of misconduct failed to complete the period of active duty and may be required to reimburse the United States as described above.

13. In pertinent part, the Statement of Policies provides:

   **1.** Department of Defense Directive 1332.23 . . ., as implemented by Army regulations, provides the following direction concerning separation of cadets . . . .

       **b.** A cadet who is separated from the USMA because of demonstrated unsuitability, unfitness or physical disqualification for military service will be discharged in accordance with the applicable Army regulations. Where such a discharge is caused by a voluntary action or misconduct on the part of a cadet subject to an active duty obligation, the reimbursement provision of paragraph II.f of the Agreement to Serve will apply. . . .

       **g.** The foregoing provisions will be applied in accordance with the following guidance . . .:

           **(3)** "Breach of service agreement" includes separation resulting from resignation, from any of the bases for separation listed in Table 1, Regulations for the United States Military Academy, including all additions to Table 1 subsequent to the date of this agreement, or from other willful acts or omissions (paragraph 10.20, Regs. USMA).

14. As of June 28 1993, Table 1 listed eight "bases for separation" deemed to constitute a "breach of [the] service agreement," including:

| **Nature of Separation** | **Standards** | **Procedures** |
|---|---|---|
| Repeated Failure of the 10.24b Cadet Physical Fitness Test | Para 10.24a Regs USMA | Para ___ Regs USMA (C20, 29 Apr 93) |

3

15. The Regulations for the United States Military Academy ("Regs USMA") referred to in paragraphs 11 and 13-14 above have been superseded by Army Regulation 210-26 ("AR 210-26"), relevant excerpts of which are attached hereto as Exhibit D.

16. In pertinent part, section 6-25 of AR 210-26 provides:

   a. The provisions of AR 350-41 pertaining to physical fitness as measured by the Army Physical Fitness Test are applicable to cadets at the Military Academy. A cadet who fails to meet the Army Physical Fitness Test standards and conditions as outlined in AR 350-41 may be separated from the Military Academy.

17. In pertinent part, section 7-9 of AR 210-26 provides:

   a. Cadets who resign from the Military Academy, or who are separated from [it] under the procedures contained in table 7-1, will be deemed to have breached their service agreement. . . .

   c. A cadet who voluntarily, or because of misconduct fails to complete the period of active duty service specified by the Secretary in the cadet's agreement to serve may be required to reimburse the Government for educational costs pursuant to Section 2005, Title 10, United States Code (10 USC 2005) and implementing regulations. . . .

18. Table 7-1 of AR 210-26 lists nine categories of "separations deemed to be a breach of service contract," including:

| **Nature of Separation** | **Standards** | **Procedures** |
| --- | --- | --- |
| Failure to maintain physical fitness standards in accordance with AR 350-41 | Para 6-25, this regulation | Para 6-25, this regulation |

19. Mr. Catelotti failed the Army Physical Fitness Test ("APFT") on one or more occasions during each of his four years as a cadet at the USMA.

20. At no time did Mr. Catelotti voluntarily, intentionally or willfully fail the APFT.

4

21. On May 23, 1997, the Superintendent at the USMA sent Mr. Catelotti a memorandum stating that the Superintendent had recommended that he be separated from the USMA and discharged from the United States Army and that the Secretary of the Army initiate action to recoup the cost of his USMA education due to his repeated failure to pass the APFT. A true copy of that memorandum is attached hereto as Exhibit E.

22. On September 4, 1998, the Adjutant of the United States Corps of Cadets at the USMA sent Mr. Catelotti a memorandum and discharge papers, informing him that he had been separated from the USMA and discharged from the Army for failure to pass the APFT and directing him to repay the cost of his USMA education in lieu of being called to active duty. A true copy of that memorandum and discharge papers is attached hereto as Exhibit F.

23. The decisions to separate Mr. Catelotti from the USMA, discharge him from the United States Army and require him to repay the cost of his USMA education were either made by or pursuant to authority delegated by the current Secretary of the Army or his predecessor.

24. At all relevant times, Mr. Catelotti has denied the validity of the debt which the United States has asserted that he owes to it for the cost of his USMA education.

25. The debt which the United States has asserted Mr. Catelotti owes to it for the cost of his USMA education is not valid because the regulations and Agreement to Serve upon which it is based contravene the language and legislative history of the statute (i.e., 10 U.S.C. § 2005) which they purport to implement.

26. Any claim which the United States might be able to assert against Mr. Catelotti with respect to the debt that it has alleged he owes to it for the cost of his USMA education is time-barred pursuant to 28 U.S.C. § 2415(a) and thus not enforceable.

27. An actual controversy exists regarding the debt which the United States asserts that Mr. Catelotti owes to it for the costs of his USMA education, as well as the validity of the provisions of the regulations and Agreement to Serve upon which that alleged debt is based.

WHEREFORE, Mr. Catelotti hereby demands judgment pursuant to 28 U.S.C. §§ 2201, 2202 and 2412:

    a. Declaring that the debt which the United States has asserted Mr. Catelotti owes to it for the cost of his USMA education is not valid and/or is not enforceable;

    b. Declaring that Mr. Catelotti owes no debt to the United States for the cost of his USMA education;

    c. Declaring that the Secretary of the Army erred and/or exceeded his authority in deciding Mr. Catelotti must repay the cost of his USMA education and directing him to do so;

    d. Awarding Mr. Catelotti the costs and reasonable attorney's fees and expenses which he has incurred in litigating this action; and/or

    e. Awarding Mr. Catelotti any other relief to which he may be entitled.

**THE PLAINTIFF DEMANDS A JURY TRIAL OF ALL ISSUES SO TRIABLE.**

Dated: 8-30-04

THE PLAINTIFF

By his attorney,

Chris S. Dodig
For Donovan & O'Connor, LLP
1330 Mass MoCA Way
North Adams, MA 01247
Tel: (413) 663-3200
Fax: (413) 663-7970

JRL:djb